[No. 32360. Department Two. August 31, 1953.]

JAMES S. PATRICK, *Respondent,* v. JEANETTE L. PATRICK, *Appellant.*[1]

[1]Reported in 260 P. (2d) 878.

*Cleman & Crimp,* for appellant.

*Halverson & Applegate* and *H. R. Williams,* for respondent.

FINLEY, J.—This is a divorce proceeding. The defendant wife appeals from a decree of divorce rendered by the superior court for Kittitas county. She questions: (a) the awarding of a divorce to the husband, contending the evidence shows that she alone is entitled to a divorce; (b) the propriety of the property disposition made by the trial court; and (c) the court's refusal to grant alimony to her.

The testimony elicited on trial is lengthy and, in many respects, confusing and conflicting. We shall not attempt to restate it at length but shall state only those facts material to this appeal.

The parties married in February of 1939, relatively late in life. The plaintiff husband was thirty-four and defendant wife was thirty-seven at the time of the marriage. There were no offspring from the marriage. The parties lived together for twelve years (except for a short separation in 1948). In June of 1951, the plaintiff husband left the home and commenced this divorce action.

At the time of her marriage, the wife was employed in a Seattle drug store, where she worked for a few months after the marriage. Apparently, she was unaware at that time of the fact that plaintiff was a man of some substance,

relatively speaking, in that he was the beneficiary of two trust funds set up in his favor by his parents. One of these trusts was solely in plaintiff's favor; he shared as a joint *cestui que trust* with his brothers and sisters in the second trust. The husband, James S. Patrick, is a man of little formal education. During most of his adult life, he has worked as a coal miner in a Cle Elum mine, owned and controlled by his family.

Early in their married life, the parties moved to Cle Elum and built a home. Whatever the stability of their marriage in its early years, apparently each of the parties became dissatisfied with the other one in later years. Defendant contends that her husband was given to excessive drinking, which finally led to his institutionalization; that he neglected her and treated her cruelly; that he was filthy and careless in his personal habits. The plaintiff, who also tired of his wife, contends that her constant nagging and mental cruelty made life unbearable for him. Seemingly, this state of affairs led to their first marital crisis in 1948, when the wife commenced a divorce action against her husband. Eventually, she dropped the action and the parties resumed their marital relation. The record shows that, shortly after their reconciliation, the husband made a gift to his wife of his interest in their Cle Elum home, and also a gift of a five-thousand-dollar United States bond, series G.

The reconciliation lasted until 1951, when, as mentioned above, the husband commenced the present divorce action. The wife cross-complained for a divorce, asking for alimony and a fair division of the property.

The appellant wife makes fourteen assignments of error attacking various fact findings and conclusions of the trial court and the provisions of the divorce decree. In her first assignment of error, she contends that she was denied a fair trial because, shortly after the trial began, the trial judge called counsel for both parties into his chambers and, at an informal conference, told them that, where the parties had married late in life and no children were involved, it was his practice to grant each of them a divorce from the

other. Although what transpired at the conference is not before us as a matter of record, we do have in the trial court's memorandum decision the benefit of the judge's reference to the substance of this conference with counsel. Appellant contends that, by virtue of the trial judge's suggestion at the conference (that the parties confine their proof to whether the property was separate or community), the trial judge in effect prejudged the issues and cut off appellant's right to prove fault, which would have been an important factor in the awarding of alimony. Appellant contends that certain rulings of the trial judge also' support her claim that he was prejudiced toward her cause.

After reviewing the record, we are convinced that, whatever the trial judge may have suggested relative to having the parties confine their proof to the main issue of whether the property involved was separate or community, neither party abided by nor felt controlled by the suggestion. The statement of facts is 485 pages in length, excluding the memorandum decision of the court. An examination of the statement of facts shows clearly that both parties dealt extensively with the issue of the fault of the other spouse.

The second and third assignments of error, argued together under the claim that the court should have denied a divorce to respondent, are directed mainly at the fourth finding of fact made by the trial court, wherein the court, in substance, found that each party had, for more than a year prior to the commencement of this action, subjected the other to cruel treatment and personal indignities; and that the criticism, fault-finding, and nagging of each party made life burdensome for the other.

The appellant's claim is that this finding is not supported by the evidence, in that the record shows appellant was a good wife, maintained a proper home, and was of good character, all in contradistinction to respondent, who had poor habits, abused appellant, and drank so excessively as to require hospitalization.

The weakness of appellant's argument is that the one-sided version of facts, recounted in her brief, ignores the portions of the evidence unfavorable to her. On the

issue of fault, the record shows that the evidence was sharply conflicting. Given this conflicting evidence, it was for the trial court to determine the credibility of witnesses and to measure the fault of each party. Thus, this aspect of the case falls within the familiar rule, requiring no citation of authority, that the fact findings of a trial court will be affirmed on appeal where the evidence is conflicting, and we cannot say that it clearly preponderates against the findings.

With regard to the second claim made under this argument—that the trial court erred in denying appellant's motion for judgment notwithstanding its oral decision, we have indicated our view that the evidence does not preponderate against the findings, and that we will not disturb the findings. This, in effect, disposes of the claim of error directed at the trial court's denial of the motion for judgment notwithstanding the oral decision. Since the findings, as they stand, support and are consistent with the conclusions announced in the trial court's oral decision, no error was committed in denying the motion.

Assignments of error Nos. 4 through 8, inclusive, are considered in appellant's brief under a heading that alimony was denied her under erroneous findings and conclusions. Among the fact findings attacked is fact finding No. 4, discussed above. We shall not discuss it further except to repeat that the court did not err in failing to find that appellant alone was entitled to a divorce.

Finding of fact No. 9 is also attacked. In it the court found that the defendant is in good health, is educated and able to support herself; whereas the plaintiff is in poor health, has been hospitalized on three prior occasions because of a nervous condition and, in some likelihood, may have to be hospitalized again; that plaintiff is a man of meager education, able to support himself only by hard manual labor. Appellant urges that the trial court erred in refusing to award alimony or make an award in lieu thereof, even though this might entail dipping into respondent's separate property. Finally, appellant points out that, during the twelve years of the parties' marriage, social

security taxes were paid with community funds and, ultimately, will inure solely to the benefit of the respondent, if he should reach the appropriate retirement age.

■ What we are called upon to consider here are the various principles we have evolved over the years regarding the award of alimony. A principle, quite frequently applied, is that no fixed, absolute rule can govern each and every case, and that the propriety of the trial court in granting or refusing to grant alimony must be governed by the case at hand. *Warning v. Warning*, 5 Wn. (2d) 398, 105 P. (2d) 715; *Memmer v. Memmer*, 27 Wn. (2d) 414, 178 P. (2d) 720.

■■ Our cases also hold that, generally, we will not disturb the discretion of the trial court in its ruling on the question of alimony. *Memmer v. Memmer, supra*. Furthermore, the standard we have adopted respecting the allowance of alimony to the wife is based on the necessity of the wife and the financial ability of the husband. *Murray v. Murray*, 26 Wn. (2d) 370, 174 P. (2d) 296. Finally, fault of the wife does not necessarily deprive her of the right to alimony. *Warning v. Warning, supra*.

■ After considering the rules just mentioned, we are of the opinion that an award of alimony to the appellant in the sum of fifty dollars a month would not be unreasonable, as the property award made by the trial court will hardly leave the husband in a necessitous condition. While we are not inclined to disturb the court's division of the property, we believe the court erred in failing to make some provision for reasonable alimony to the wife, since, in our opinion, appellant should be compensated in some manner for her potential interest in the social security benefits of the husband, as to which, under Federal law, she will lose all rights by virtue of the divorce.

Assignments of error Nos. 9 to 14, inclusive, are argued under the claim that the "division of property was arbitrary, unjust, and inequitable." This argument requires that we set out the substance of the fact finding whereby disposition of the parties' property was made. Therein, the husband was awarded the following: Two United States bonds,

series G, face value $200; one United States bond, series G, face value $5,000; United States bonds, series G, total face value $3,700; four United States Treasury 2½% bonds, face value $1,000 each, total $4,000; an undivided one-fourth interest in one Canadian Pacific Railroad Co. perpetual bond, face amount $5,000; all interest checks on above bonds, value $320; sixty shares of stock in West Side National Bank of Yakima; cash in the sum of $745; checking account balance, $38.79; household furnishings and antiques inherited by husband from his parents' estates; hunting and camping equipment, belonging to him; a 1949 Chevrolet automobile; and all of his interest in and to the two Patrick trust funds, described and referred to earlier in this opinion.

The following property was awarded to the wife: certain United States bonds, series E, face value $1,900 (determined to be the separate property of the wife); one United States bond, series G, face value $5,000 (given to appellant by her husband in 1948); the home of the parties, valued from $6,000 to $9,750; all household furnishings and furniture of the parties, excepting the items inherited by respondent from his parents, as mentioned above.

As to the parties' debts, the court ordered the husband to pay his own sanitarium bill of $968 and an accountant's bill of $15. The wife was ordered to pay a bill of some fifty-nine dollars, owing on a washing machine.

The substance of appellant's claim is that this division of the property is inequitable, arbitrary, and capricious. This claim rests on the assertion that respondent husband received property valued roughly at $93,000, whereas appellant received property valued at approximately $13,000. In rebuttal, respondent points out that the sums arrived at by appellant, in comparing the respective values of the property received by each, are misleading, since, of the $93,000 which appellant is claimed to have received, approximately $62,000 is held in trusts.

In disposing of the appellant's assertions that the property division is arbitrary and capricious, we believe it is unnecessary to consider in detail whether certain prop-

erty involved is to be characterized, piece by piece, as community or separate property. *All* property of parties to a divorce action is before the court for a just and equitable division. RCW 26.08.110. In prior decisions, we have recognized that the characterization of property as "community" or "separate" property is not necessarily controlling. See *Folsom v. Folsom*, 106 Wash. 315, 179 Pac. 847; *Morse v. Morse*, 42 Wn. (2d) 229, 254 P. (2d) 720.

■ After considering the testimony in the record, and giving some weight to the unquestioned fact that the husband came into the marriage with substantially larger separate property interests than the wife, it cannot be said the trial court erred in the property disposition it made. When we consider, as the trial judge did, that respondent's earnings were only those of a coal miner and were not large, it is highly doubtful that, during the twelve years of his marriage, such earnings could have produced the very considerable amount of property involved here. The trial judge was of the view that the bulk of respondent's earnings was expended for housekeeping and day-to-day living costs, and that the government securities accumulated were purchased with the husband's own separate property or the income therefrom. We cannot say that the court abused its discretion in making the award of property decreed in this case. As we have noted in prior decisions, we will not overturn the property disposition made by the trial court unless we can find an abuse of discretion by the trial judge. *High v. High*, 41 Wn. (2d) 811, 252 P. (2d) 272.

Finally, we believe that the assignment of error to the effect that the court erred in the allegedly small amount it awarded for attorneys' fees, is not well taken.

The decree of the trial court is modified to allow appellant wife alimony in the sum of fifty dollars a month, as indicated heretofore. In all other respects the decree is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.

---

November 16, 1953. Petition for rehearing denied.